IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FRANK SUMMERS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 98-2692 (AK) |
| v. | ) ) | |
| HOWARD UNIVERSITY, | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S OBJECTIONS TO
## THE REPORT OF THE SPECIAL MASTER

Defendant Howard University ("Howard"), by and through counsel, hereby submits its objections to the Special Master's Supplemental Attorneys' Fees and Costs Report, which was served on December 16, 2005.

## STATEMENT OF THE CASE

On January 25, 2005, - - almost 18 months after this Court's *final* order on fees and costs and almost 5 months after the mandate of the U.S. Court of Appeals for the D.C. Circuit - - plaintiffs filed a motion to refer a petition for supplemental fees to a special master (Doc. No. 227). Plaintiffs sought fees for work after August, 2002, including fees for work performed prior to this Court's June 16, 2003 final order on fees (Doc. No. 205). Howard opposed plaintiffs' motion (Doc. No. 229); however, the Court granted plaintiffs' motion in pertinent part (Doc. No. 233).

Howard filed a motion for reconsideration (Doc. No. 235), arguing, among other things, that plaintiffs' petition was untimely under Fed. R. Civ. P. 54(d)(2)(B), that the Court's June 16, 2003 final order on fees precluded an award of additional fees, that the mandate of the court of

appeals foreclosed further reconsideration of both the merits of the case and this Court's award of fees and costs and that there was no statutory authority to support an award of fees for work on the appeals, which did not address any issue arising under the Fair Labor Standards Act. This Court denied Howard's motion without prejudice to renew at a later date (Doc. No. 238). The Court reasoned that Howard's motion was "premature insofar as the Special Master has made no finding on whether or not Plaintiffs are entitled to supplemental attorneys' fees." August 5, 2005 Order at 1-2 (Doc. No. 238).

The Special Master has now issued his report and has determined that plaintiffs are entitled to some fees, provided there is no legal impediment to their obtaining supplemental fees. (A copy of the Special Master's report is attached hereto.) Accordingly, the arguments advanced in Howard's previous motion for reconsideration are now ripe for resolution by this Court.

In addition, quite apart from Howard's position that plaintiffs are not entitled to any fees for work performed prior to the issuance of the mandate of the court of appeals, Howard maintains that the Special Master clearly erred in some of his determinations. Accordingly, any fees awarded for work performed prior to the issuance of the mandate must be substantially reduced.

## ARGUMENT

### I. PLAINTIFFS ARE NOT ENTITLED TO ANY FEES FOR WORK PERFORMED PRIOR TO THE ISSUANCE OF THE MANDATE OF THE COURT OF APPEALS

For all the reasons set forth in Howard's motion for reconsideration, plaintiffs are not entitled to fees for work performed prior to August 30, 2004, the date the court of appeals issued its mandate. For the sake of efficiency, Howard will not repeat its arguments at any length here; instead Howard respectfully refers the Court to its motion for reconsideration (attached hereto). Howard does want to emphasize, however, that awarding fees to plaintiff would not only be

2

inconsistent with this Court's characterization of its June 16, 2003 order as a final order on fees, but also in violation of the mandate of the court of appeals. "The mandate rule does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing. Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal; the court must attempt to implement the spirit of the mandate; and the court may not alter rulings impliedly made by the appellate court." *South Atlantic Ltd. P'ship of Tenn. v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004). *Accord Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 597 (D.C. Cir. 2001) (mandate covers all issues decided "explicitly or by necessary implication"). The court of appeals expressly addressed and affirmed this Court's final order on fees. It is impermissible for plaintiffs to attempt to circumvent this Court's final order and the court of appeals' mandate by filing a tardy petition for supplemental fees.

## II.  THE SPECIAL MASTER ERRED IN SEVERAL OF HIS RULINGS

Under Fed. R. Civ. P. 53 as recently amended, both the Special Master's factual findings and his conclusions of law are to be reviewed *de novo* in the event a party objects to his findings or conclusions. Fed. R. Civ. P. 53(g)(3), (4). This Court's review of the Special Master's report will confirm that he made several errors.

To begin, the Special Master erred by effectively placing the burden on Howard to show that plaintiffs' fee request was not reasonable. He emphasizes that certain of plaintiffs' time entries when read "in context" may be justified. SM Report at 3. However, it is plaintiffs who have "the burden of establishing the reasonableness of [their] fee request" and in doing so plaintiffs must provide documentation that is sufficiently detailed "to enable [a] court to determine with a high degree of certainty that [claimed] hours were actually and reasonably expended." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)

3

(quoting *In Re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)).  A fee award cannot be based on speculation regarding what an entry might mean "in context."

    A.    <u>The D.C. Circuit Disallows Block Entries</u>

The D.C. Circuit has unambiguously ruled that time sheets supporting an attorneys' fee request must be itemized by task; all tasks performed in one day cannot be combined together in a block entry.  When an attorney submits a block entry "the court is left to approximate the amount of time which should be allocated to each task"; accordingly, such documentation is "inadequate."  *In Re Olson*, 884 F.2d at 1428-29.  *Accord Role Models*, 353 F.3d at 970-71.  Note that the prohibition on lumping together tasks does *not* depend on whether some of the tasks are compensable and others non-compensable.  *Olson*, 884 F.2d at 1428-29.

The Special Master misread precedent.  He interpreted *Role Models* and other cases as holding that block entries should be disallowed or reduced only when entries combine "allowable and non-allowable time."  SM Report at 10.  This is not the law, and it was clear error for the Special Master to misapply precedent.  As already indicated, block entries are not acceptable even if all the tasks combined in the block entry are compensable.  Because his findings and conclusions are based on this misinterpretation of applicable law, this Court should not adopt the Special Master's report insofar as it finds plaintiffs' block entries acceptable.

As an example of the problems created by plaintiffs' use of block entries, the Court can look at the following three entries, which all relate in some way to work on one of plaintiffs' appellate briefs:

12/18   Review appellant's brief; write out cases to be pulled and read; outline brief.   3.75

1/3&4   Review appellee's [sic] brief; research counter-cases; produce rough draft to brief; draft Motion Summary Affirmance; outline brief.              14.9

DC1 30158343.1

      1/6      Distinguish cases; write substantive law; discuss with John Kennedy; finalize first draft.[1]     2.50

All these tasks might be compensable, but there is no way to determine whether the time spent on each task was reasonable. This is why plaintiffs are not entitled to an award of fees based on these entries. Did plaintiffs' attorneys spend 8 hours reviewing Howard's brief? Or did they spend 10 hours on the motion for summary affirmance? If so, the Court, presumably, would disallow at least a portion of the claimed time on the ground that the time expenditure was unreasonable. However, the Court cannot make a determination of reasonableness because the time devoted to reviewing Howard's brief, the time devoted to the motion, the time devoted to research, etc. is confusingly combined with other tasks. Plaintiffs' block entries simply do not allow Howard, the Special Master or the Court to determine with a "high degree of certainty" whether the time devoted to any one task was reasonable.

In Howard's opposition to plaintiffs' fee petition (Doc. No. 245), Howard listed thirty entries that were block entries. However, the Special Master reduced or disallowed compensation for eight of these entries (10/3/02; 1/22/03; 2/18/03; 2/25/03; 1/8/04; 9/8/04; 10/6/04; 10/7/04) for other reasons (lack of success, insufficient clarity, etc.). Howard maintains that the remaining twenty-two entries are not entitled to compensation because they do not conform to the standards established by the D.C. Circuit. Arguably, no compensation whatsoever should be awarded for these entries; however, to be consistent with the Special Master, Howard would accept a reduction of 15%, unless the block entries are unacceptable for other reasons. (The Special Master usually used 15% as his guideline for reducing fees awarded

---

[1]     The December entry is from 2003; the January entries are from 2004. Howard assumes the January 3 and 4 entries are meant to refer to reviewing appellant's brief, as Howard was the appellant.

a questionable time entry; SM Report at 4). Nine of the twenty-two block entries (see entries for 9/20/02; 11/10/02; 5/8/03; 9/9/03; 1/7/04; 1/16/04; 10/12/04; 1/24/05; and 1/26/05) include entries for clerical tasks for which the Special Master nonetheless awarded full compensation. (See Section C below.) These entries should be disallowed in their entirety, as discussed below. If they are disallowed, then the remaining thirteen block entries total 65.95 hours. At plaintiffs' attorneys' rate of $360 per hour, this equals $23,742. A 15% reduction amounts to $3,561.30.

If the Court does not accept Howard's argument that entries reflecting clerical work should be disallowed in their entirety, then the 15% reduction should also be applied to the other nine block entries. All twenty-two block entries allowed by the Special Master total 88.9 hours or, at plaintiffs' attorneys' rate of $360 per hour, $32,004. A 15% reduction amounts to $4,800.60.

   B. <u>Howard Cannot Be Charged for Plaintiffs' Errors</u>

Howard objected to plaintiffs' time entry for 3/4/03 which requests 1 hour of time for a letter to the court of appeals concerning a typo in plaintiffs' brief. The Special Master ruled that correcting errors is "an integral part of the advocacy process" and awarded plaintiffs the full amount requested. The Special Master cited *American Petroleum Instit. v. EPA*, 72 F.3d 907 (D.C. Cir. 1996) as support for his decision. SM Report at 8.

Neither *American Petroleum Instit*. nor any other case supports the Special Master's conclusion. Moreover, with all due respect to the Special Master, a rule that would allow counsel to recover for their own errors is extremely ill-advised. Such a rule would provide an incentive for counsel to be sloppy in their work since the more "typos" the greater their fee recovery.

6

Plaintiffs request reimbursement at the rate of $360 based on their many years of litigation experience. That experience presumably allows plaintiffs' counsel to produce a brief free of material errors. Howard should not have to pay for both the brief and the corrections to the brief. In this regard, Howard notes that plaintiffs request 7 hours of time for reviewing the brief that later had to be corrected. See plaintiffs' time entry for 2/24/03. A prolonged proofing of a brief that fails to detect a material error does not merit any compensation, let alone compensation at the Laffey rate for experienced counsel.[2]

Accordingly, the Court should either deny compensation for the time entry of 3/4/03 or the time entry of 2/24/03. The former would result in a reduction of $360; the latter in a reduction of $2,520.

### C. The Special Master Erred by Characterizing Clerical Work as Work Requiring Legal Skills

The Special Master allowed reimbursement for a number of entries that were clerical or administrative in nature. The Special Master recognizes the legal principle that clerical and administrative work cannot be reimbursed, but he characterized work that was clearly clerical in nature as an "integral part of the advocacy process." SM Report at 3.

The Special Master erred in doing so, as illustrated by the inconsistency between his ruling on the instant fee petition and his ruling on plaintiffs' prior fee petition. In his prior report, the Special Master stated that "time spent making court filings, obtaining address information, word processing, pulling and copying documents, and performing other ministerial and clerical tasks . . . should not be recoverable as attorney fees" (Doc. No. 191, at 3). Yet in

---

[2] The 2/24/03 entry encompasses four tasks: "John review draft; makes comments; makes changes; revised draft". Thus, not all 7 hours were spent on review of the brief. However, because plaintiffs chose to submit a block entry, no determination can be made of how much time was devoted to a review of the brief.

his current report, the Special Master has inexplicably awarded fees for a task described as "insert dates into calendar." It does not take legal talent worth $360 an hour to place dates on a calendar. This is a quintessential clerical task. Similarly, to "input changes" and "compile" a document are clerical tasks comparable to "word processing, pulling and copying documents" which the Special Master recognizes is not reimbursable. Yet he has allowed fees for the former while previously disallowing fees for the latter

To support his award of fees for clerical tasks, the Special Master speculates that these tasks "in context" may have involved legal skills. SM Report at 3. With all due respect, the Special Master has no way to confirm this hypothesis with the "high degree of certainty" required by the D.C. Circuit. Again, plaintiffs have the burden of proof, *not* Howard. To award $360 an hour based on a time entry that references placing dates on a calendar because somehow this task might have involved legal skills is to remove any burden from plaintiffs to provide detailed and probative time entries. *Cf. Role Models*, 353 F.3d at 970. If inserting dates on a calendar is compensable, there is no reason why copying documents could not be compensable because "in context" the copying of documents could refer to the selection of which documents to copy, which arguably might require some legal skill.

Before moving on to list the specific time entries that should be disallowed, it only remains to note that the cases cited by the Special Master lend no support to his conclusions. The Special Master cites *American Petroleum Instit. and Michigan v. EPA*, 254 F.3d 1087 (D.C. Cir. 2001) as precedent for his decision to award fees for compiling of documents, inserting dates on a calendar, etc. Neither case awards fees for such tasks. To the contrary, *Michigan v. EPA* expressly disallowed fees for reproducing, transmitting and obtaining documents. *Id*. at 1095-96.

The entries that should be disallowed in their entirety are:[3]

**2002**

9/20    Review/edit opposition; John Kennedy review; **input changes; prepare final document.**                2.75

11/10    Review Court of Appeals 10/7 Order; discuss timing with JFK; **insert dates into calendar;** review Court of Appeals Rules on presentation of briefs.    1.2

**2003**

1/7    **Sent update letter to all 67 clients.**                .4

5/8    Reviewed, wrote and **sent update letter to all 67 clients regarding and enclosing Judge Kay's 17-page 5/7/03 Order adopting Special Master's Back Wage Report.**                2.25

9/9    Discussed with Kathleen Dolan appeal/case strategy and wrote and **sent letter to all 67 clients and enclosing a survey of whether asking the officers if they wanted to drop the appeal process and go to trial in Summers.**    3.7

**2004**

1/7    Review; edit; shephardize; **compile**.    2.9

1/16    Discussed with Kathleen Dolan and wrote and **sent letter to all clients outlining/discussing Howard University's 3-page settlement offer letter of January 9, 2004.**                2.25

3/8    **Fill out form for arguing appeal,** review rules accompanying.    .4

---

[3]    The bolded portion of each entry reflects clerical work.

9

10/12   Reviewed Special Master's award and **checked check amounts** and wrote letter to all clients enclosing the Special Master's back wage amount check and a liquidated damages check and explaining same and that another interest check will be issued.

        3.4

**2005**

1/25   Finalize motion; review for typos; **prepare for filing**.   1.2

1/26   **Checked interest amount figures** and wrote letter to all clients with their interest amount check explaining same.   2.8

Note that Howard has omitted from this list any entries for which the Special Master already made a reduction, even though his reduction was only for 15% to 30% (SM Report at 3-4), whereas case law establishes that no fees should be awarded for clerical work. *Michigan v. EPA*, 254 F.3d at 1095-96. Moreover, Howard has withdrawn its clerical task objection to entries asking reimbursement for sending or mailing letters where this task is included in a block entry and the time claimed is less than two hours.[4]

The total amount of time that should be excluded for clerical tasks amounts to 23.25 hours or $8,370.

    D.    The Special Master Erroneously Required Howard
            To Pay Twice for the Same Task

On page 6 of his report, the Special Master allows plaintiffs reimbursement for performing the same task twice, namely a review of an emergency motion filed by Howard. The

---

[4]   This is being more generous than necessary to plaintiffs, but Howard reasons that if a block entry which includes time for mailing or sending a document is less than two hours, then it is less likely that Howard is being asked to pay a significant amount of money for stuffing envelopes and taking letters to the post office.

10

Special Master's reasons for allowing the requested fees are that the entries differ slightly, with the second one referring to a revised motion:

    9/11    Review Howard 89-page fax which had been faxed overnight (JK/KD); discuss plan opposition.     1.5

    9/11    Review Howard revised 89-page Emergency Motion/hand-delivered (Compared differences noted potential response)     1.75

Moreover, the Special Master observed that "Defendant had every opportunity to deny in its Opposition that there were two versions of the 89 page communication, but failed to do so." SM Report at 6.

The Special Master is incorrect. Howard did expressly state in its Opposition that the second entry should be disallowed because "Plaintiffs' counsel reviewed the *same* document twice in one day." Opposition at 14 (Doc. No. 245). In stating that the documents were the "same" Howard was obviously denying that they were different.

Moreover, it is undisputed that the documents were the same. The undersigned counsel spoke with Kathleen A. Dolan, Esq., one of plaintiffs' counsel, on Wednesday, January 4, 2006, and Ms. Dolan admitted the documents were the same. Accordingly, the second time entry for 1.75 hours, or $630, should be disallowed.[5]

    E.    The Special Master Failed to Address Howard's
           Argument That the 8/3/04 Entry Was Excessive

In its Opposition, Howard had argued that the entry for 8/3/04, which indicates that plaintiffs' counsel spent 2.2 hours preparing a bill of costs, should be denied in part because the

---

[5]     Howard's counsel expresses its gratitude for the candor of plaintiffs' counsel.

The Court should note that, at least as of January 4, 2006, plaintiffs still seek reimbursement for the second entry, apparently on the ground that they did not realize the documents were the same.

time is excessive. The Special Master mistakenly thought he had addressed this argument by reducing the entries for 6/2/03 and 6/3/03. SM Report at 6 n. 2. However, these latter entries refer to the bill of costs for the *first* appeal. The 8/3/04 entry relates to the *second* appeal. Thus, the Special Master completely failed to address Howard's argument.

In any event, 2.2 hours for preparing a simple form is clearly unreasonable. This time should be reduced to .4 hours. This reduction of 1.8 hours is equivalent to $648.

      F.      <u>The Time Allowed for Court Appearances Is Unreasonable</u>

The Special Master generously read time entries for "travel time" (see SM Report at 5) as including time actually spent at the hearing or argument, even though no reference to the hearing or argument is included in the time entry. This inappropriately places on Howard the burden of showing that the time requested is unreasonable. It was plaintiffs' responsibility to submit a detailed and probative time entry and this Court should disallow the 10.4 hours of "travel time" requested.

Moreover, even assuming the entries refer to time spent at the March 20, 2003 hearing and the two arguments at the court of appeals, the time needs to be further reduced. (The Special Master already reduced the time by three hours.) The undersigned counsel represented Howard at the hearing and the two arguments and the time billed Howard for each appearance was 2.4 hours, 1.5 hours and 1.6 hours respectively. (See attached Lindsay Declaration.) A further reduction of 1.9 hours equals $684 in fees.

12

## CONCLUSION

For all the foregoing reasons, this Court should disallow any fees requested for work performed prior to the issuance of the mandate of the court of appeals and for work following the issuance of the mandate that should be disallowed for other reasons.[6] If the Court believes that supplemental fees should be awarded for work performed prior to the issuance of the mandate, then the Special Master's award should be reduced by a further $14,253.30.

                                                                           Respectfully submitted,

                                        By: _____/s/_____
                                              Ronald A. Lindsay #333435
                                              SEYFARTH SHAW LLP
                                              815 Connecticut Avenue, N.W., #500
                                              Washington, DC  20006-4004
                                              (202) 463-2400

Dated:  January 5, 2006

---

[6] Howard's position is that none of the time entries for work performed after the issuance of the mandate merit compensation. The Special Master properly disallowed the 9/8/04 and 10/6/04 entries for lack of success. The 10/7/04, 10/12/04, 1/24/05 and 1/26/05 entries should be disallowed because they refer, at least in part, to clerical work. The remaining entries refer to work on plaintiffs' supplemental attorneys' fee request, which, for the reasons indicated, should never have been submitted. Plaintiffs' requested costs cannot be allocated between pre-mandate and post-mandate work, at least based on plaintiffs' submission.